UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THERESA W.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

20-CV-704-LJV
DECISION & ORDER

---

      On June 11, 2020, the plaintiff, Theresa W. ("Theresa"), brought this action under the Social Security Act. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On February 2, 2021, Theresa moved for judgment on the pleadings, Docket Item 11; on July 2, 2021, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on July 26, 2021, Theresa replied, Docket Item 14.

      For the reasons stated below, this Court grants Theresa's motion in part and denies the Commissioner's cross-motion.[2]

---

      [1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

      [2] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and will refer only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Theresa argues that the ALJ erred in two ways. Docket Item 11-1. First, she argues that because the ALJ gave the only physical medical opinion in the record no weight, he necessarily relied on his own lay judgment in formulating her physical

2

residual functional capacity ("RFC").[3]  *Id.* at 15.  Second, she argues that the ALJ impermissibly "cherry-picked" the opinion of the consultative psychologist, Gregory Fabiano, Ph.D.  *Id.* at 23.[4]  The Court agrees with the first of those two arguments and therefore remands the matter to the Commissioner.

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source."  20 C.F.R. § 404.1527(c).  An ALJ may not reject or discount the opinion of a medical professional unless other competent medical evidence in the record supports that decision.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).  And an "ALJ cannot substitute his own lay opinion in place of established acceptable medical authorities or treating sources."  *Morseman v. Astrue*, 571 F. Supp. 2d 390, 397 (W.D.N.Y. 2008) (citing *Balsamo*, 142 F.3d at 81).

Along the same lines, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or

---

[3] A claimant's RFC "is the most [she] can still do despite [her] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

[4] More specifically, Theresa argues that the ALJ erred in rejecting Dr. Fabiano's opinion that she was limited in her ability to interact with supervisors.  Docket Item 11-1 at 23-28.  "There is no absolute bar to crediting only portions of medical source opinions," *Younes v. Colvin*, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015), but "an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions," *Raymer v. Colvin*, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citing *Younes*, 2015 WL 1524417, at *8).  That is exactly what the ALJ did here.  The ALJ afforded Dr. Fabiano's opinion "great weight" but "reject[ed]" the supervisor limitation and explained why Theresa's "treatment records" did not support that limitation.  Docket Item 10 at 449.  For that reason, the ALJ did not err in rejecting the supervisor limitation.

testified before him." *Balsamo*, 142 F.3d at 81 (marks and alterations omitted). That is because "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Wilson v. Colvin*, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citing *Dailey v. Astrue*, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010), *report and recommendation adopted*, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010)).

Moreover, "[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47).

The ALJ violated these rules here: by rejecting the opinion of Gilbert Jenouri, M.D., the only physical medical opinion in the record, *see generally* Docket Item 10, the ALJ created a gap in the record and impermissibly relied on his own lay judgment to formulate the physical RFC.

Dr. Jenouri examined Theresa on November 17, 2019. *Id.* at 736. He found that Theresa had a "moderate restriction walking/standing long periods, bending, stair climbing, lifting, and carrying" and that she "should avoid smoke, dust, and other known respiratory irritants." *Id.* at 738-39. Dr. Jenouri limited Theresa to sitting for two hours at a time, standing for one hour at a time, and walking for one hour at a time; he also limited her to sitting for no more than four hours, and standing and walking for no more

4

than two hours each, in an eight-hour workday.  *Id.* at 741.  He opined that she could occasionally lift or carry up to ten pounds and never lift or carry more than that; frequently reach, handle, finger, feel, push, and pull; occasionally operate foot controls and climb stairs and ramps; and never balance, stoop, kneel, crouch, crawl, or climb ladders or scaffolds.  *Id.* at 740, 742-43.  And he found that Theresa occasionally could be exposed to unprotected heights, moving mechanical parts, and operating a motor vehicle but that she never could be exposed to humidity, wetness, pulmonary irritants, extreme heat or cold, or vibrations.  *Id.* at 744.

The ALJ afforded Dr. Jenouri's opinion "no weight" because "his opinion [was] not supported by his own examination findings or consistent with the evidence in [Theresa]'s treatment records" and because "[t]he limitations [Dr. Jenouri] identified [were] well out of proportion to the examination findings and [Theresa]'s activities of daily living."  *Id.* at 447.  The ALJ then found that Theresa had the physical RFC

> to perform light work as defined in 20 CFR [§] 416.967(b)[5] except she can lift and carry up to 20 pounds on occasion and frequently up to 10 pounds. [Theresa] can sit up to 6 hours in an 8-hour workday and stand and/or walk up to 6 hours in an 8-hour workday.  She is limited to occasional [sic] climbing ramps and stairs, but cannot climb ladders, ropes, or scaffolds. She is limited to environments where there is no concentrated exposure to pulmonary irritants, such as odors, fumes, dust, gas, or poor ventilation. [Theresa] can frequently balance.  She can occasionally stoop, kneel, and crouch.  She can never crawl.  She cannot have exposure to excessive vibration, and she is limited to work that does not require driving a vehicle.

*Id.* at 441.

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities."  20 C.F.R. § 416.967(b).

5

Those limitations are quite specific, but no physician or other medical provider opined about most of them. "Although there are many treatment notes in the record, they generally contain bare medical findings and do not address or illuminate how [Theresa's] impairments affect her physical ability to perform work-related functions." *See Wilson*, 2015 WL 1003933, at *21. Therefore, and because he gave the only physical medical opinion "no weight," *see supra*, the ALJ necessarily relied on his own lay judgment to evaluate the medical records and formulate the RFC. It is otherwise "unclear to the Court how the ALJ, who is not a medical professional, came up with this highly specific RFC determination." *See Perkins v. Berryhill*, 2018 WL 3372964, at *3 (W.D.N.Y. July 11, 2018) (citation omitted). That was error.

The Commissioner argues that "'there is no . . . rule requiring remand' where an ALJ [gives] 'partial' weight to several opinions without giving 'controlling' weight to any single medical opinion." Docket Item 13-1 at 12-13 (citing *Michael T. v. Comm'r of Soc. Sec.*, 2021 WL 681287, at *10-11 (W.D.N.Y. Feb. 22, 2021)). That general statement of the law is correct. Indeed, this Court has held that an ALJ's failure to give any one opinion significant or controlling weight does not necessarily mean that the ALJ improperly relied on his lay judgment. *See Lori M. v. Comm'r of Soc. Sec.*, 2021 WL 230916, at *4 (W.D.N.Y. Jan. 22, 2021). Furthermore, an ALJ can discount medical opinions but still "appropriately . . . address[] and balance[] each opinion in formulating the RFC." *Id.* But that is not what happened here.

Here, the ALJ gave the *only* physical medical opinion *no* weight. *See* Docket Item 10 at 446-50. Here, the opinions to which the ALJ assigned "some," "great," or "little" weight all addressed Theresa's mental functioning. *See id.* at 448-50. So here,

6

the ALJ did not choose among several opinions, giving the greatest weight to those that he believed deserved such weight.  Here, he created a detailed physical RFC on his own, without the benefit of any medical opinion.

In other words, because the ALJ rejected the only physical medical opinion in the record, he was left with no medical opinion from which to construct the physical RFC.  As a result, the ALJ's physical RFC determination—including such specific decisions as how many hours Theresa could sit, stand, and walk and how much weight she could carry—ultimately was based not on a competent medical opinion but on his own lay judgment.  Moreover, because Dr. Jenouri's opinion was the only physical medical opinion in the record, "[r]egardless of whether the ALJ properly discounted [Dr. Jenouri's] opinion, his rejection of the only [physical] medical opinion in the record created an evidentiary gap that requires remand."  *See Pryn v. Berryhill*, 2017 WL 1546479, at *4 (W.D.N.Y. May 1, 2017) (citing *Stein v. Colvin*, 2016 WL 7334760, at *4 (W.D.N.Y. Dec. 19, 2016); *House v. Astrue*, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (ALJ's appropriate rejection of the treating physician's opinion nonetheless necessitated remand because the absence of any other medical assessment created an evidentiary gap in the record)).

The Commissioner seems to suggest that although the ALJ said that he gave Dr. Jenouri's opinion no weight, he really did not mean it.  More specifically, the Commissioner argues that "[w]hile the ALJ stated he gave 'no' weight to Dr. Jenouri's opinion, it is clear from the RFC finding that the ALJ relied on this examining physician's opinion and observations.  For example, the ALJ adopted Dr. Jenouri's opinion regarding no crawling or climbing ladders/ropes/scaffolds."  Docket Item 13-1 at 14

7

(internal citations omitted). That argument misses the mark. As an initial matter, it is a foundational principle of administrative law that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *see also Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (quoting another source) (noting that courts "may not accept . . . *post hoc* rationalizations for agency action"). Here, the ALJ explicitly rejected Dr. Jenouri's opinion. And the Commissioner's belated attempt to salvage the RFC by suggesting that the ALJ did not mean what he said is both too little and too late.

Regardless, even though the physical RFC may match Dr. Jenouri's opinion in some respects, most of it does not. For example, the ALJ found that Theresa "can sit up to 6 hours in an 8-hour workday and stand and/or walk up to 6 hours in an 8-hour workday." Docket Item 10 at 441. Such a limitation does not appear anywhere in the record. On the contrary, and in sharp contrast, the only medical opinion addressing how long Theresa could sit, stand, and walk was Dr. Jenouri's, finding that Theresa could sit for only four hours, stand for only two hours, and walk for only two hours in an eight-hour workday. *Id.* at 741.

If an ALJ includes a "highly-specific" limitation in the claimant's RFC, that limitation cannot come from whole cloth. *See Tomicki v. Berryhill*, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018). In other words, the ALJ cannot arrive at specific limitations that do not appear anywhere in the medical record. *See Balsamo*, 142 F.3d at 81. Therefore, when the record provides no support for the specific amount of time that a claimant can sit or stand without relief, a specific finding toward that end is not

8

supported by substantial evidence.  *See, e.g.*, *Tomicki*, 2018 WL 703118, at *5 ("[T]he record does not support the ALJ's conclusion that [the claimant] needs to briefly switch between sitting and standing only every thirty minutes.  The ALJ did not cite any evidence to support this highly-specific sit-stand option . . . .  Moreover, there is evidence in the record indicating that [the claimant] needs to change positions every few minutes, not every thirty minutes."); *see also Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (summary order) (RFC to perform manipulation/fingering 50% of the time during a workday was not supported by substantial evidence).  That is precisely the case here.

Ultimately, it is not clear to the Court how the ALJ was able to glean from the bare medical data that Theresa's RFC would allow her to perform light work—or the jobs that he identified—despite her impairments.  Because the ALJ improperly based Theresa's physical RFC on his own lay opinion and nothing more, his decision is not supported by substantial evidence, and remand is required.  *See Sherry v. Berryhill*, 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that [the] plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data."); *Perkins*, 2018 WL 3372964, at *4 ("Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review.").

## **CONCLUSION**

For all the above reasons, the Commissioner's motion for judgment on the pleadings, Docket Item 13, is DENIED, and Theresa's motion for judgment on the pleadings, Docket Item 11, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   September 23, 2021
         Buffalo, New York

                                                   */s/ Lawrence J. Vilardo*
                                                   LAWRENCE J. VILARDO
                                                   UNITED STATES DISTRICT JUDGE